Filed 11/12/20  P. v. Pelayo CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SAUL PELAYO,<br><br>    Defendant and Appellant. | B303425<br><br>(Los Angeles County<br>Super. Ct. No. PA021870) |

APPEAL from an order of the Superior Court of Los Angeles County, David W. Stuart, Judge.  Affirmed.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Saul Pelayo shot a relative three times in front of family members, following an argument. He was convicted in 1999 of second degree murder and sentenced to 15 years to life, plus 10 years for using a firearm. (Pen. Code, §§ 187, subd. (a), 12022.5, subd. (a).)[1] This court affirmed the judgment in *People v. Pelayo* (Oct. 4, 2000, B137409) [nonpub. opn.] (*Pelayo I*).

In 2019, appellant requested resentencing. (§ 1170.95.) The trial court appointed counsel for him. After considering the record of conviction and the parties' arguments, the court found appellant ineligible for relief as a matter of law. We agree. Appellant intentionally killed the victim, with malice. Under current law, he could be convicted of murder. We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

### *Background*

On October 31, 1995, appellant shot and killed his uncle, Rosalio Pelayo (Rosalio), outside the home of Irinea Pelayo (Irinea). A week before the shooting, appellant showed a shotgun to his uncle Juan Pelayo (Juan) and his cousin Mark, saying he planned to use it to collect debts. Appellant stored the gun behind a dresser in Irinea's home. (*Pelayo I, supra,* B137409.)

Rosalio and his brother Pedro were at Irinea's home while in town on a construction project. Rosalio accused appellant of laziness and the two tussled; Rosalio slapped appellant and

---

[1] Undesignated statutory references are to the Penal Code.

[2] The trial court took judicial notice of *Pelayo I, supra,* B137409. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) Appellant's petition recites verbatim the facts set forth in *Pelayo I.*

2

caused a split lip.  Juan told them to calm down.  Pedro saw Rosalio poke a knife at appellant.  (*Pelayo I, supra,* B137409.)

Rosalio and Pedro began to pack their things to leave Irinea's house.  Rosalio went to his truck, parked out front, to place food and tools in it.  Pedro was on the doorstep when he heard Rosalio say, " 'If you have enough balls, then go ahead and shoot.' "  Pedro heard a gunshot, then the sound of another round being chambered.  (*Pelayo I, supra,* B137409.)

Pedro saw appellant pointing a shotgun at Rosalio, who was facing his truck with his back to appellant.  Appellant fired two more shots.  After the second shot, Pedro called to appellant, telling him not to shoot.  (*Pelayo I, supra,* B137409.)

Juan heard three shots and went outside.  He saw appellant holding a shotgun and Rosalio lying on the ground.  Appellant appeared nervous and shaken.  Juan refused appellant's request to help him escape.  Appellant took his weapon and left.  Juan collected the shotgun shells and threw them in the neighbor's trash.  Mark heard the gunshots, checked behind the dresser, and saw that appellant's shotgun was gone.  (*Pelayo I, supra,* B137409.)

Rosalio died from gunshot wounds to his head, shoulder, and elbow.  He had drugs and alcohol in his system and a folded knife in his pocket.  No weapons were found in his truck.  (*Pelayo I, supra,* B137409.)

Appellant was arrested two years after the shooting.  He waived his rights and spoke to police in a taped interview.  He described a fight with Rosalio that occurred a week before the shooting, when Rosalio took appellant's eyeglasses.  Appellant defended himself by punching and kicking Rosalio.  Rosalio told

3

appellant he would "get" him; appellant feared Rosalio as a drug user who knew martial arts.  (*Pelayo I, supra,* B137409.)

Appellant said he went to Irinea's house on October 31 to get his eyeglasses from Rosalio.  He, Juan, Mark, and a friend brought a shotgun to frighten or "get" Rosalio before he got appellant.  Rosalio and appellant argued.  Appellant asked for his eyeglasses.  Rosalio said he had destroyed them and punched appellant in the face.  Juan grabbed Rosalio, who held a knife with a three-inch blade to appellant's stomach.  Juan brought out the shotgun and threatened to shoot Rosalio.  Rosalio began carrying his possessions to his truck and said, "I'm gonna get you."  (*Pelayo I, supra,* B137409.)

Appellant went outside.  When Rosalio looked into the back of his truck, appellant was afraid he might pull out a gun.  Juan gave appellant the shotgun and urged him to shoot Rosalio.  Rosalio said, "You don't got the guts to pull the trigger."  Appellant was angry and not thinking.  He decided to shoot Rosalio because "I figured either his life or my life.  And I figure also . . . all his kids are grown up [and] everything you know.  Everybody is making it and I'm just starting.  I still haven't had a wife, kids, nothing."  Appellant shot Rosalio from a distance of 12 to 15 feet.  Rosalio initially laughed.  Appellant shot him two more times.  After the last shot, Rosalio fell saying, "You got me." Appellant said a prayer for Rosalio.  (*Pelayo I, supra,* B137409.)

Appellant told police he left the scene of the shooting and went to the home of a cousin, Carlos Saavedra.  When Saavedra asked why he shot his uncle, appellant said he did not know and "wasn't thinking right."  He went to Mexico and got married.  He knew police were looking for him.  (*Pelayo I, supra,* B137409.)

4

At trial, appellant testified and denied shooting Rosalio. He claimed he left Irinea's house before the shooting because Rosalio was angry and threatening. Appellant went to Saavedra's house and later learned from Juan that Rosalio was shot. Appellant did not contact police to say he was innocent nor did he have Saavedra provide an alibi by telling police appellant was at his home at the time of the shooting. Appellant testified that he lied to police about shooting Rosalio because Juan threatened him and he feared Juan. He did not report Juan's threats. (*Pelayo I, supra,* B137409.)

On rebuttal, Juan, Pedro, and Mark testified that no one threatened appellant or participated in a plan to falsely accuse appellant of shooting Rosalio. Juan denied giving appellant the gun or telling him to shoot Rosalio. (*Pelayo I, supra,* B137409.)

Appellant was convicted by jury of second degree murder with personal use of a firearm and sentenced to 15 years to life in prison, with a 10-year firearm use enhancement. (*Pelayo I, supra,* B137409.)

### *The Resentencing Petition*

In May 2019, appellant petitioned in propria persona for resentencing, alleging that he was convicted of felony murder. He recited the facts from *Pelayo I, supra,* B137409. In opposition, the People asserted that he is ineligible for relief. The public defender appointed for appellant argued that he is entitled to an evidentiary hearing at which the People must prove ineligibility beyond a reasonable doubt.

At the hearing on appellant's petition, the People argued that appellant "was the actual killer, so he is ineligible for relief under the terms of the statute." Appellant's counsel replied that "the prosecution has the burden of proof beyond a reasonable

doubt under [section] 189, sub[division] (e), subsection (1), to prove that up at [a] hearing."

The court said, "I am going to find that the defendant is not eligible for the relief requested. Based on the facts of the case . . . he was the actual shooter [and] there is no accomplice liability presented to the jury or felony murder." It denied the petition.

## DISCUSSION

### *The 2018 Murder and Resentencing Laws*

In 2018, the Legislature amended the murder statutes and authorized resentencing for past convictions. The statute reads: "It is necessary to amend the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, §1, subd. (f).)

The petition must show that the criminal charge allowed the prosecutor to proceed under a felony-murder theory or the natural and probable consequences doctrine; the petitioner was convicted of murder at trial or accepted a plea in lieu of trial; and he could not now be convicted of murder because of changes to the murder statutes. (§ 1170.95, subd. (a)(1)–(3).)

The court must "determine if the petitioner has made a prima facie showing that [he] falls within the provisions of this section." (§ 1170.95, subd. (c).) To conserve judicial resources, the court may examine the conviction record to determine if the petitioner falls within the provisions of section 1170.95 as a

6

matter of law.  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 323, 328–330, review granted Mar. 18, 2020, S260493.)[3]

### *Pelayo Is Ineligible for Resentencing*

The facts set forth in appellant's petition, from *Pelayo I,* show his ineligibility.  "Our opinion in his direct appeal, which described the evidence presented at trial, demonstrates that the murder involved a single perpetrator, [appellant]; it was not a situation in which multiple persons carried out the attack." (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 899, review granted Aug. 12, 2020, S263219.)  The jury found he *personally* used a firearm to commit the murder.  (§§ 187, subd. (a), 12022.5, subd. (a).)  As stated in *Pelayo I, supra,* B137409, "The evidence here utterly fails to establish a lack of intent to kill."

Appellant "was not convicted of felony murder or murder as an aider or abettor under a natural and probable consequences theory.  [Citation.]  The jury convicted him of second degree murder and found true that he personally and intentionally used a firearm to commit the crime.  Thus, the jury implicitly found [he] was the 'actual killer,' and the changes to sections 188 and 189 are inapplicable."  (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410.)  As a result, "he is indisputably ineligible for relief."  (*Ibid.; People v. Tarkington, supra,* 49 Cal.App.5th at p. 899, rev.gr.)

---

[3] We recognize that the Supreme Court intends to address whether the trial court may consider the record of conviction to determine if a petitioner has made a prima facie showing of eligibility.  (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137, review granted Mar. 18, 2020, S260598.)

### The Felony-Murder Rule Did Not Apply

Appellant argues that he is eligible for resentencing because jurors may have convicted him of felony murder. The jury was instructed with CALJIC No. 8.10, which cited "assault with a firearm" as the underlying felony. (§ 245, subd. (a)(2).)[4] As we shall explain, the felony-murder rule did not apply to appellant as a matter of law.

Under the merger doctrine, "the underlying felony must be an independent crime and not merely the killing itself. Thus, certain underlying felonies 'merge' with the homicide and cannot be used for purposes of felony murder." (*People v. Chun* (2009) 45 Cal.4th 1172, 1189 (*Chun*).) Assault with a firearm merges with a murder charge. In *People v. Ireland* (1969) 70 Cal.2d 522, the defendant shot and killed his wife. The jury was instructed on felony murder; assault with a deadly weapon was the purported underlying felony. The Supreme Court held that the instruction violated the merger doctrine. "[A] second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged." (*Id*. at pp. 539–540.)

---

[4] At the parties' request, we take judicial notice of the jury instructions. CALJIC No. 8.10 reads: "[Defendant is accused of having committed the crime of murder, a violation of Penal Code section 187.] [¶] . . . [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A human being was killed; [¶] 2. The killing was unlawful; and [¶] 3. *The killing [was done with malice aforethought] [or] [occurred during the commission or attempted commission of] [a felony inherently dangerous to human life. Assault [with a] firearm is a felony inherently dangerous to human life.]*" (Italics added.)

8

In short, "When the underlying felony is assaultive in nature . . . the felony merges with the homicide and cannot be the basis of a felony-murder instruction. An 'assaultive' felony is one that involves a threat of immediate violent injury. [Citation.] In determining whether a crime merges, the court looks to its elements and not the facts of the case." (*Chun, supra,* 45 Cal.4th at p. 1200.) Appellant could not be convicted of felony murder. Under *People v. Ireland, supra,* 70 Cal.2d 522, assault with a firearm merged into the homicide. It was not an independent felony supporting a felony-murder finding.

### Giving a Felony-Murder Instruction Was Harmless Error

The error in instructing on felony murder (which was not raised in *Pelayo I, supra,* B137409) was immaterial. Any juror who relied on the felony-murder rule necessarily found appellant committed "a felony inherently dangerous to human life." (CALJIC No. 8.10.) "The willingness to commit a felony inherently dangerous to life is a circumstance showing an abandoned and malignant heart." (*Chun, supra,* 45 Cal.4th at pp. 1187–1188.)

No juror could have found that appellant committed this shooting "without also finding [he] committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life—which is a valid theory of malice. In other words, on this evidence, no juror could find felony murder without also finding conscious-disregard-for-life malice. The error in instructing the jury on felony murder was, by itself, harmless beyond a reasonable doubt." (*Chun, supra,* 45 Cal.4th at p. 1205.)

9

The jury was instructed on—and rejected—voluntary manslaughter.[5]  CALJIC No. 8.50 was given:  "The distinction between murder and manslaughter is that murder requires malice while manslaughter does not" and "malice, which is an essential element of murder, is absent" for manslaughter. Further, "If you are convinced beyond a reasonable doubt and unanimously agree that the killing was unlawful, but you unanimously agree that you have a reasonable doubt whether the crime is murder or manslaughter, you must give the defendant the benefit of that doubt and find it to be manslaughter rather than murder."

If the jury had found that appellant lacked malice, it had to convict him of manslaughter.  By rejecting manslaughter, the jury by necessity found that he killed the victim with malice. Although the jury was instructed on self-defense, this theory was also rejected.[6]  Appellant did not claim self-defense:  He contended that he was not present at the shooting.

---

[5] CALJIC No. 8.37 instructed jurors:  "The crime of manslaughter is the unlawful killing of a human being without malice aforethought."  CALJIC No. 8.40 was given:  "Every person who unlawfully kills another human being without malice aforethought but with an intent to kill is guilty of voluntary manslaughter in violation of Penal Code Section 192(a).  There is no malice aforethought if the killing occurred [upon a sudden quarrel or heat of passion] [or] [in the actual but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury.]"

[6] CALJIC No. 5.17 was given, which stated that a defendant "is not guilty of murder" if he kills another without malice, in the actual but unreasonable belief it was necessary to defend against imminent peril to life or great bodily injury.

The jury believed the prosecution witnesses, who testified that appellant deliberately fired three shotgun blasts, one at the unarmed victim's head, despite pleas to stop.  Appellant does not qualify for resentencing under section 1170.95.  Absent a prima facie showing of eligibility, the trial court correctly rejected appellant's contention that an evidentiary hearing is required to retry the jury's determination that he was the actual killer.  "The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*People v. Allison* (2020) 55 Cal.App.5th 449, 461.)

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

11